[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiffs obtained a judgment in the amount of $2,030.00 against Christopher Uberti and Steffanie Cogswell and recorded it on the Meriden Land Records on September 22, 1997. It was lodged against a mobile home owned by Uberti and Cogswell and located at the trailer park subsequently acquired by the defendants Colony Brooks Homes LLC and Colony Brooks Home.
The judgment represented damages in a suit the plaintiffs brought against Uberti and Cogswell for a breach of contract for the latter's refusal to convey to the plaintiffs the mobile home referred to above.
The defendant Colony Brook Homes purchased the mobile home park in December 1997 and holds the license, while the defendant Hoddinott is the manager of the park.
Uberti and Cogswell, meanwhile were occupying the mobile home and had fallen behind in their rent payments to the park owner. Colony Brook LLC instituted a summary process action against Uberti and CogswelI and on March 5, 1998 the following stipulated judgment was entered:
1. If the defendants [Uberti and Cogswell] physically vacate the mobile home park on or before 3/31/98, the plaintiff [Colony Brook Homes, LLC] will pay to the defendants $1,000.00 toward their moving expenses.
2. If the mobile home is not removed from the plaintiff's [Colony Brook Homes, LLC] park or if the mobile home is not sold to a purchaser approved by the plaintiff park owner on or before 4/30/98, then the mobile home shall be considered abandoned, and the plaintiff may remove or otherwise dispose of the mobile home without any further liability the defendants [Uberti and Cogswell]. CT Page 3032
The occupants neither removed nor sold the mobile home, but apparently "trashed" and abandoned it. When a member of tenant's association inspected the unit, in April, she found panels ripped off walls, the toilet smashed, stove turned upside down and the furnace torn out. Windows were broken and the door was broken off the hinges. She was concerned for the health and safety of the children of tenants who might enter the unit and complained to the defendant Hoddinott. She stated that Mr. Uberti had told her that he would destroy the unit before he'd let anyone else have it.
Mr. Hoddinott determined the unit was a total loss and arranged for its removal as trash at a cost of $1,800.00. This was done in May.
The plaintiffs seek to recover from the defendants for the amount of their lien, claiming they were entitled to the benefit of Section 21-67a(f) of the General Statutes which requires a "Removal Statement" to be placed on the land records.
 DISCUSSION I
It is undisputed that the defendants had no actual notice of the plaintiff's lien and that the plaintiffs never spoke to them about their interest in the unit and their desire to move into it.
The language of statute requiring the filing of a "Removal Statement" is as follows:
"Removal statement. Any owner of a mobile manufactured home located in a mobile manufactured home park or on a single-family lot who desires to remove such home from the park or lot in or on which it has been situated shall file for recording with the town clerk of said municipality a certificate substantially in the following form: . . ."
The plaintiffs argue that the defendants acquired title to the subject mobile home subject to their lien and thus were obligated to file the removal statement.
This claim is completely contrary to the evidence, all of which was provided by the plaintiffs. Exhibit A reports the CT Page 3033 conveyance of the mobile home to Uberti and Cogswell. Exhibit C in the plaintiffs' judgment lien, placed on the mobile home.
Finally, the terms of the stipulated judgment make it clear that the occupants were the owners and these defendants rented them space for the unit.
As they were not owners of a mobile home, the defendants were not obligated to file under Section 21-67a(f).
 II
The plaintiffs also advance the theory that if the defendants were not "owners," then they converted to their own use secured property in which the plaintiffs had an interest.
Assuming, arguendo, that this was the case, that conversion would have at best been of nominal value, since there was reliable testimony that unit was destroyed. Courts should not be utilized where a recovery is "de minimis."
However, aside from the damage issue, is the fact that the defendants had the stipulated judgment which authorized them to remove or dispose of this unit.
The plaintiffs urge the court to liken this "conversion" to that of one destroying equipment left on premises where a UCC lien exists. The short answer to this analogy is that abandoned property doesn't enjoy the unfettered protection that the plaintiffs claim.
For example, countless motor vehicles are towed, confiscated and junked because as abandoned property, they must be removed. In evictions, appliances and other property, much of it with UCC liens, is removed by sheriffs and frequently treated as abandoned property.
 III
The plaintiffs have stated their interest in moving into the unit in question and even described a visit to the premises.
Yet, at no time did they make their interest known to the defendants, nor take steps to obtain occupancy through the owners, Uberti and Cogswell. Nor was a foreclosure action CT Page 3034 instituted to collect on their lien.
 CONCLUSION
In the absence of a statute dealing with abandoned mobile home units, the court finds that these defendants were confronted with a situation that posed a definite and serious threat to other occupants of the park.
The interests of those occupants dictated rapid remedial action and the action taken was reasonable and appropriate under the circumstances.
And finally, by the time the defendants were able to act, the lien of the plaintiffs was already worthless, so that the plaintiffs' damages, if any, were insignificant.
Judgment may enter for the defendants.
Anthony V. DeMayo
Judge Trial Referee